**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| T&T Enterprises LLC, | No. CV-18-08231-PCT-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Aztec Secret Health and Beauty Limited, et al., | |
| Defendants. | |

Pending before the Court are three motions: (1) Defendant Aztec Secret Health and Beauty Ltd.'s ("Aztec") Motion to Dismiss under 12(b)(6) (Doc. 17), (2) Plaintiff T & T Enterprises LLC's ("T&T") Motion to Expedite Hearing on Its Declaratory Judgment Claim (Doc. 10), and (3) Defendant Oceanside Health Products, LP's ("Oceanside") Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 14). As explained below, the Court will deny Aztec's Motion to Dismiss, deny T&T's Motion to Expedite, and grant Oceanside's Motion to Dismiss.

## BACKGROUND

I. <u>Allegations</u>

T&T is an Arizona limited liability company with its primary place of business in Lake Havasu City, Arizona. (Doc. 26 ¶ 1.) Aztec is a Nevada corporation. (*Id.* ¶ 2.) Oceanside is a California limited partnership. (*Id.* ¶ 3.)

T&T sells products from its brick-and-mortar store located in Lake Havasu City, Arizona, and on online marketplaces. (*Id.* ¶ 7.) T&T predominantly uses Amazon.com

("Amazon") as its online marketplace. (*Id.*) Among the products T&T sells on Amazon is Aztec Secret Indian Healing Clay ("Healing Clay"), which T&T purchased from Aztec. (*Id.* ¶¶ 8, 10, 15.)

In November 2016, T&T received a "counterfeit notice" from Amazon regarding one of the Aztec products it was selling. (*Id.* ¶ 15.) In response, T&T asked Aztec for help in resolving the issue. (*Id.*) Aztec's office manager, in turn, provided a letter authorizing T&T to sell Aztec products on Amazon ("authorization letter"). (*Id.* ¶¶ 15, 16; *id.* at Ex. 2.) The authorization letter stated, in relevant part: "It has been brought to our attention that you require verification that T&T Enterprises, LLC dba Our Pampered Home, is authorized to sell our products listed below in the United States, including on the site www.Amazon.com. We grant full permission to T&T Enterprises, LLC dba Our Pampered Home to sell our product in the United States and their inventory is provided to them directly from our stock." (*Id.* ¶ 16; *id.* at Ex. 2.) The issue with Amazon was quickly resolved. (*Id.* ¶ 17.)

On August 26, 2018, T&T received another counterfeit notice from Amazon related to an Aztec product it was trying to sell. (*Id.* ¶ 19.) Again, T&T asked Aztec to help resolve the issue with Amazon. (*Id.* ¶ 20.) This time, an unspecified Aztec employee directed T&T to contact "Paul" to resolve the issue. (*Id.* ¶ 20.) "Paul" is Paul Baeyens, a general partner of Oceanside, which claims to be a "contract manufacturer" for Aztec. (*Id.* ¶¶ 20, 9.) T&T notified Baeyens that T&T had received the counterfeit notice (*id.* ¶ 21), and Baeyens retracted the counterfeit claim after confirming that T&T's inventory levels of Healing Clay were not greater than that which T&T had purchased from Aztec (*id.* ¶¶ 23, 30).

Baeyens, however, explained in the email exchange that T&T would no longer be able to sell Healing Clay on Amazon. (*Id.* ¶ 24.) Mr. Baeyens represented that Aztec had enrolled in an Amazon program called "Transparency," which "requires Aztec Secret products to be packaged in a new manner." (*Id.* ¶ 24.) Because the Healing Clay in T&T's possession would not have been packaged in accordance with the "Transparency"

standards, any Healing Clay that T&T sent to Amazon for sale would be "set aside and marked as defective." (*Id.*)

Baeyens then stated in an email: "[i]f you have additional pallets of new product that you want us to buy back from you, please let me know and we can arrange that so you do not have inventory you cannot sell stuck at your warehouse." (*Id.* ¶ 25; *id.* at Ex. 3.) Further, Baeyens stated: "You mentioned you had 10 pallets of 1 lb. clay and 4 pallets of 2 lb. clay that you purchased from Aztec in May but have not sent to Amazon that is still in your warehouse, so if you want us to take those back now is the time to arrange that." (*Id.*)

T&T emailed back that "it believed it had approximately 29 pallets, based on a quick count, to return to Aztec, but that it had 'estimated it could be upwards of 50.'" (*Id.* ¶ 27; *id.* at Ex. 3.) Baeyens "responded with 'Got it' and asked for further clarification on the product so that the parties could 'discuss logistics and payment terms.'" (*Id.* ¶ 28; *id.* at Ex. 3.) The parties continued to exchange emails regarding the amount of Healing Clay that T&T had purchased. (*Id.* ¶ 29; *id.* at Ex. 3.) Baeyens further stated that T&T would receive payment on the same day that inventory was received and that Oceanside's driver would be able to pick up the Healing Clay. (*Id.* ¶ 31; *id.* at Ex. 3.) Finally, Baeyens offered to sign a buy back contract with T&T. (*Id.*)

On September 5, 2018, Baeyens sent a draft of the buy back agreement to T&T and explained that Oceanside would be buying back the Healing Clay on Aztec's behalf. (*Id.* ¶ 34; *id.* at Ex. 7.) The draft provided that Oceanside would buy back 24 pallets of Healing Clay. (*Id.* ¶ 35; *id.* at Ex. 7.) In addition, the draft buy back agreement included other terms, such as a choice of law provision, which T&T and Baeyens had not previously discussed. (*Id.* ¶ 35; *id.* at Ex. 7.) T&T objected to the draft buy back agreement and counsel for T&T and Oceanside became involved after the parties could not resolve their dispute. (*Id.* ¶¶ 35, 36; *id.* at Ex. 7.)

On September 14, 2018, counsel for Oceanside sent T&T's counsel a revised buy back agreement, again "offering to purchase only 24 of the 36 to 37 pallets of [Healing

1  Clay] currently in T&T's warehouse" and noting that this was Oceanside's "last and final
2  offer." (*Id.* ¶¶ 38, 39; *id.* at Ex. 8.) In response, counsel for T&T stated that T&T "would
3  continue to sell the [Healing Clay] on Amazon.com[.]" (*Id.* ¶ 40; *id.* at Ex. 8.) In turn,
4  Oceanside stated that if T&T continued selling product on Amazon, Oceanside would
5  notify Amazon's Seller Central. (*Id.* ¶ 41.) A notification to Amazon's Seller Central
6  "could result in a number of very serious consequences for T&T, up to and including
7  closing T&T's Amazon.com account." (*Id.* ¶ 42.)

## II. Procedural Posture

T&T initiated this lawsuit on September 21, 2018. (Doc. 1.) The complaint does not specifically identify any causes of action or legal theories that would entitle T&T to relief. The Prayer for Relief requests only declaratory relief—specifically, a declaration (1) "that T & T is authorized to sell, on Amazon.com, the Aztec Secret products purchased in good-faith reliance on being able to sell these products on Amazon.com"; or (2) "that in the event T & T cannot sell its product on Amazon due to Aztec Secret's enrollment in the Amazon 'Transparency' program or through other interference by Aztec or Oceanside, Aztec, or its designee, must buy back all of the Aztec Secret products T & T purchased from Aztec and has not yet sold through Amazon.com at the cost T & T paid for the products, including the original and return shipping costs, as well as costs to package/prepare the product for return shipping." (Doc. 26 at 13.)

On September 25, 2018, T&T filed a motion to expedite, asking the Court to order a "speedy hearing" on its declaratory judgment action so it can "sell Aztec Secret product before that product expires[.]" (Doc. 10 at 5.)

On October 24, 2018, Oceanside filed a motion to dismiss pursuant to Rule 12(b)(2), asserting that the Court lacks personal jurisdiction over it. (Doc. 14.)

On October 31, 2018, the matter was transferred to a new judge. (Doc. 16.)

On November 2, 2018, Aztec moved to dismiss under Rule 12(b)(6). (Doc. 17.)

On November 9, 2018, the Court ordered T&T to amend its complaint to properly allege diversity jurisdiction. (Doc. 22.)

On November 15, 2018, T&T filed an amended complaint to comply with the Court's order. (Doc. 26.)

On November 16, 2018, the parties stipulated that "for each of the motions, responses and replies currently pending before the Court . . . all references to the Verified Complaint at Docket Entry 1 shall be read as referring to the Verified Amended Complaint at Docket Entry 26." (Doc. 27.)

On December 17, 2018, the Court held oral argument on the three pending motions. (Doc. 37.)

**DISCUSSION**

I. <u>Aztec's Motion to Dismiss</u>

Aztec moved to dismiss the complaint under Rule 12(b)(6). (Doc. 17.) In its motion, Aztec argued: (1) the complaint is insufficient because it fails to identify an underlying cause of action and "is so vague it begs this Court to speculate as to the legal basis of an enforceable right" (*id.* at 6-7); (2) to the extent T&T is proceeding under a breach-of-contract claim, the claim fails because "[t]he purchase orders contain no reference to any guarantee to sell Product on any website . . . [and thus] there was no guarantee to sell on Amazon" (*id.* at 8-10); (3) to the extent T&T is alleging a tortious interference claim, the claim fails because "there is no argument or evidence that T&T had a contract with Amazon to sell its Product" (*id.* at 10); and (4) to the extent T&T is seeking to hold Aztec liable for the conduct of Oceanside, such a claim fails because T&T failed to allege that an agency relationship existed between the two (*id.* at 10-12).

In its response, T&T argued it had alleged sufficient facts for the Court to declare T&T's rights under multiple theories, including "breach of contract," "tortious interference," and the equitable doctrines of "promissory estoppel" and "unjust enrichment." (Doc. 28 at 5.) T&T also argued that because it had alleged Aztec held out Baeyens—Oceanside's general partner—as its agent, Oceanside's actions could be attributable to Aztec. (*Id.* at 10-12.)

In its reply, Aztec argued the Court should not consider any of the new legal and

- 5 -

equitable theories identified in T&Ts response because they were not articulated in the complaint. (Doc. 30 at 2-3). Aztec also argue that T&T's request for declaratory relief was generally improper due to the existence of disputed issues of fact. (*Id.* at 3-4.)

### A. Legal Standard

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal,* 556 U.S. at 679-80. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

### B. Analysis

As an initial matter, Aztec is incorrect in its assertion that T&T must specifically identify its legal theories and causes of action in the complaint. "Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief'; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014) (citation omitted). Thus, a plaintiff need only "plead *facts* sufficient to show that her claim has substantive plausibility" and she is "required to do no more to stave off threshold dismissal for want of an adequate statement of [her] claim." *Id.* at 347 (emphasis added). *See also Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("Although it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this. . . . Instead of asking whether the complaint points to the appropriate statute, a court should

ask whether relief is possible under any set of facts that could be established consistent with the allegations. . . . [T]he complaint need not identify a legal theory, and specifying an incorrect theory is not fatal."); *Mechler v. United States*, 2012 WL 5289627, *2 (D. Kan. 2012) ("There is simply no requirement that a pleading articulate a specific 'cause of action.' Rules 8(a)(1) and (2) merely require a statement of the 'claim' pursued and the jurisdictional grounds. Those statements can take various forms so long as they provide fair notice of what the claim is, the grounds for it, and the basis for jurisdiction.").

That does not mean, of course, that T&T may waltz into federal court without any discernable legal theory or plausible basis for seeking relief. Even though the only remedy T&T seeks in this action is a declaratory judgment, it is still incumbent upon T&T to articulate why it may be entitled to prevail. *Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635-36 (9th Cir. 2014) ("The Declaratory Judgment Act . . . does not create new substantive rights, but merely expands the remedies available in federal courts. . . . [A] federal court may only grant a declaratory judgment in 'controversies which are such in the constitutional sense.' To determine whether a declaratory judgment action presents a justiciable case or controversy, courts . . . [must] first identify the law underlying the request for a declaratory judgment. It is necessary to first examine the underlying law because the Declaratory Judgment Act only creates new remedies, and therefore, the adverse legal interests required by Article III must be created by the authority governing the asserted controversy between the parties." (citations omitted)).

Here, although T&T's complaint is not a model of clarity, the Court concludes that T&T may plausibly state a claim for declaratory relief premised on at least two theories: (1) breach of contract and (2) promissory estoppel. Thus, Aztec's motion to dismiss under Rule 12(b)(6) will be denied.

### 1. Breach of Contract

T&T sufficiently alleges that the contract to purchase Healing Clay, which arose from Aztec's fulfillment of purchase orders, contained an unwritten term that T&T would be permitted to resell the product on Amazon. Aztec's contention that the statute of frauds,

A.R.S. § 47-2201 *et seq.*, necessarily prohibits T&T from introducing terms not in writing (Doc. 17 at 8) is incorrect. Where, as here, the parties don't dispute there is a binding contract between them, and the parties agree on the quantity of goods to be sold, the statute of frauds is potentially inapplicable. *Cravotta v. Deggingers' Foundry, Inc.*, 215 P.3d 636, 641 (Kan. Ct. App. 2009).[1]

The statute of frauds states that "a contract for sale of goods for the price of five hundred dollars or more" is not enforceable absent a writing that is "signed by the party against whom enforcement is sought." A.R.S. § 47-2201(A). Additionally, it states that "[a] writing is not insufficient because it omits . . . a term agreed upon *but the contract is not enforceable under this subsection beyond the quantity of goods shown in such writing.*" *Id.* (emphasis added). Aztec latches onto the italicized language to argue that T&T cannot introduce any additional terms beyond those in writing. But the italicized language doesn't mean that additional terms are automatically unenforceable; rather, it means that the contract is limited to the quantity of goods represented in the writing. *See* U.C.C. § 2-201 cmt. n.1 (Unif. Law Comm'n 1977) (emphasis added) ("The required writing *need not contain all the material terms of the contract* . . . . The only term which must appear is the quantity term which need not be accurately stated but recovery is limited to the amount stated. The price, time and place of payment or delivery, the general quality of the goods, or any particular warranties may all be omitted."). Because the parties acknowledge the existence of a contract, the Court addresses the next step of the analysis: whether T&T can introduce evidence of additional terms.

The parol evidence statute, A.R.S. § 47-2202, prohibits a party from contradicting "[t]erms . . . *set forth in a writing intended by the parties as a final expression of their agreement* . . . by evidence of any prior agreement or of a contemporaneous oral agreement." A.R.S. § 47-2202 (emphasis added). Therefore, T&T will be precluded from

---

[1] Arizona's Statute of Frauds, A.R.S. § 47-2201 "is identical to § 2–201 of The Uniform Commercial Code (UCC)." *Koenen v. Royal Buick Co.*, 783 P.2d 822, 826 (Ariz. Ct. App. 1989). Therefore, "[i]n interpreting this section of the UCC, [Arizona courts] look to other states." *Id.*

introducing evidence of additional terms—such as authorization to resell Healing Clay on Amazon—only if there is "a writing intended by the parties as a final expression of their agreement." The Court cannot determine at this time that, as a matter of law, the purchase orders sent by T&T and fulfilled by Aztec were final expressions of their agreements.

### 2. Promissory Estoppel

T&T also states a valid claim for promissory estoppel related to reliance on representations made in the authorization letter sent by Aztec in November 2016. To prove promissory estoppel, T&T must show that (1) Aztec made a promise; (2) Aztec should have reasonably foreseen that T&T would rely on that promise; and (3) T&T justifiably relied on that promise. *See Double AA Builders, Ltd. v. Grand State Constr. LLC*, 114 P.3d 835, 839 (Ariz. App. 2005) (citation omitted). If all three elements are proved, the promise "is binding if injustice can be avoided only by enforcement of the promise." *Id.*

It is possible, applying Rule 12(b)(6) standards, for T&T to meet all three requirements here. First, T&T pleaded allegations sufficient to constitute a plausible promise. T&T alleged that it contacted Aztec for assistance after receiving a counterfeit notice from Amazon. In response, an Aztec employee provided a letter stating: "It has been brought to our attention that you require verification that T&T Enterprises, LLC dba Our Pampered Home, is authorized to sell our products listed below in the United States, including on the site www.Amazon.com. We grant full permission to T&T Enterprises, LLC dba Our Pampered Home to sell our product in the United States and their inventory is provided to them directly from our stock." (Doc. 26, Ex. 2.) It is plausible to construe such a representation as a promise to allow T&T to resell Healing Clay anywhere in the U.S., including on Amazon.

Second, T&T has pleaded facts sufficient to conclude that Aztec should have reasonably foreseen that T&T would rely on the promise. T&T alleges that Aztec provided the authorization letter because T&T had received a counterfeit notice from Amazon. (Doc. 26 ¶ 15.) Because T&T requested the authorization so that T&T could continue to sell on Amazon, Aztec could have reasonably foreseen that T&T would wish to continue

reselling Healing Clay on Amazon after the promise.

Third, T&T has alleged facts sufficient to conclude that it justifiably relied on Aztec's promise that T&T had permission to sell on Amazon. T&T alleges that each purchase paid for by T&T after the authorization letter "was made in good-faith reliance on the promises in [the authorization letter]." (Doc. 26 ¶ 18.) Although T&T did not send any new offers to purchase Healing Clay after it received the authorization letter (*compare id.* at Ex. 2 with *id.* at Ex. 1), T&T alleges a course of dealing where Aztec would accept T&T's offers to purchase Healing Clay many months after the offer (*id.* ¶¶ 11, 12). As such, T&T could have revoked those offers before Aztec's acceptance if T&T did not believe it would have authorization to sell on Amazon. *See Butler v. Wehrley*, 425 P.2d 130, 134 (Ariz. App. 1967) (quoting *Patton v. Paradise Hills Shopping Ctr., Inc.*, 417 P.2d 382, 389 (Ariz. App. 1966) ("An offer which is given without consideration to the offeror can be withdrawn at any time prior to the acceptance by the offeree.").

Finally, there is no merit to Aztec's argument that T&T can't assert a claim for promissory estoppel because there is a contract governing the obligations of the parties. (Doc. 30 at 10.) Although T&T argues that the right to resell the Healing Clay on Amazon was an implied term of its purchase contracts with Aztec (see above), Aztec vigorously disputes that claim and contends there is no written contract touching upon what T&T may do with the Healing Clay after purchase. If Aztec is correct, there is no contract that would foreclose T&T's assertion of a promissory estoppel claim. *Bowman v. Honeywell Int'l, Inc.*, 438 Fed.Appx. 613, 615 (9th Cir. 2011) ("Arizona law prohibits an action based on the promissory estoppel theory of liability if there is an express, written contract *on the same subject matter*." (emphasis added and citation omitted)). At this preliminary stage of the proceedings, T&T may rely on alternative theories. *See, e.g., Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.,* 426 F. Supp. 2d 1356, 1371 (N.D. Ga. 2006) ("Rule 8 of the Federal Rules of Civil Procedure permits a party to plead alternative and inconsistent claims and theories of recovery. Thus, a party is generally permitted to plead both promissory estoppel and breach of contract claims in the alternative."); *Brenner v. Brenner*,

2012 WL 3597247, *7 (E.D.N.Y 2012) ("Because defendant has denied that the parties entered into a 'valid enforceable contract' . . . plaintiffs are 'entitled to plead the alternative theory of promissory estoppel in the event it is later determined there is no enforceable contract.'" (citation omitted)).[2]

II. T&T's Motion to Expedite

T&T has requested that the Court order an expedited hearing on its declaratory judgment claim pursuant to Rule 57 of the Federal Rules of Civil Procedure, asserting that "there is no need for prolonged litigation" and T&T will be prejudiced if the matter is not resolved expediently. (Doc. 10.) In response, Aztec contends that discovery is needed to resolve disputed facts and there is no urgency that necessitates hearing the case on an expedited basis. (Doc. 17 at 12-13.)

Rule 57 grants the Court discretion to set a "speedy hearing" in a declaratory judgment action. Nevertheless, the Court declines to order a speedy hearing here. The dispute is not a "fairly straight-forward issue of contract interpretation," *see Tri-State Generation & Transmission Ass'n, Inc. v. BNSF Ry. Co.*, 2008 WL 2465407, *7 (D. Ariz. 2008), but instead requires fact-finding regarding, among other things, whether T&T's reliance on the authorization letter was reasonable, whether an unwritten term of T&T and Aztec's contract included T&T's guaranteed ability to resell on Amazon, and whether the declaratory relief sought by T&T in this action would be effectual.[3] These questions are

---

[2] The parties' briefing discusses, at length, whether Aztec may be held liable, under agency principles, for statements made by Baeyens. The Court need not resolve those issues at this juncture because it is denying the motion to dismiss on other grounds.

[3] The Court pauses to note that it has concerns with T&T's request for a judicial declaration that it is authorized to sell Healing Clay on Amazon. On the one hand, because such a declaration wouldn't force Amazon to do anything, the Court is satisfied that it wouldn't run afoul of the prohibition against imposing declaratory relief against third parties not before the Court. *See, e.g., Tri-State Generation & Transmission Ass'n, Inc. v. BNSF Ry. Co.*, 2008 WL 2465407, *2 (D. Ariz. 2008) ("[A] party does not have standing to bring a declaratory judgment claim regarding rights and obligations under a contract to which it is neither a party nor a third-party beneficiary."); *Pascua v. Option One Mortg.*, 2014 WL806226, *4 n.2 (D. Hawai'i 2014) ("At most, a declaration by the court can assign rights among parties; it cannot bind third parties not before the court."). On the other hand, precisely because this declaration wouldn't force Amazon to do anything, it's unclear whether the declaration would have any meaningful effect. *Cf. Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*, 2014 WL 652253, *3 (W.D. Va. 2014) ("[A] declaratory judgment 'is only appropriate when it would serve a useful purpose in clarifying and

- 11 -

best addressed through the normal discovery process, not an expedited hearing. Therefore, the Court will deny T&T's motion to expedite pursuant to Rule 57.

III. Oceanside's Motion to Dismiss

Oceanside has moved to dismiss because the Court lacks personal jurisdiction over it. Oceanside argues it has "no physical presence in Arizona, never entered into any contracts or agreements with Plaintiff T&T . . . and does not purposefully direct its actions toward citizens of the State of Arizona . . . ." (Doc. 14 at 1-2.) T&T counters by identifying several actions directed at T&T in Arizona, including sending a buy back agreement to T&T and threatening to report T&T to Amazon's Seller Central, all while knowing that T&T was located in Arizona. (Doc. 20 at 8-9.)

### A. Legal Standard

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (citation and internal quotation marks omitted). "[U]ncontroverted allegations must be taken as true, and '[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor,' but "[a] plaintiff may not simply rest on the 'bare allegations of [the] complaint.'" *Id.* (citations omitted).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). "Arizona law permits the

settling the legal relations in issue to guide the parties in the future.' Such relief is not appropriate to merely influence the conduct or opinions of third parties or the public at large." (citations omitted)). T&T already has a letter (the 2016 authorization letter) confirming that it's an authorized reseller, yet Amazon won't accept future shipments of Healing Clay from T&T because T&T's remaining product doesn't have the right kind of packaging to comply with Amazon's "Transparency" program. It's therefore unclear what another "declaration of reseller status" would accomplish—the parties' arguments during the December 17, 2018 hearing suggest that, unless T&T receives new packaging with the required barcodes, nothing is going to happen.

- 12 -

exercise of personal jurisdiction to the extent permitted under the United States Constitution." *Id.* (citing Ariz. R. Civ. P. 4.2(a)). Accordingly, "whether the District Court ha[s] personal jurisdiction over Defendants is subject to the terms of the Due Process Clause of the Fourteenth Amendment." *Morrill*, 873 F.3d at 1141.

"Constitutional due process requires that defendants 'have certain minimum contacts' with a forum state 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.''" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts exist "if the defendant has 'continuous and systematic general business contacts' with a forum state (general jurisdiction), or if the defendant has sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction)." *Morrill*, 873 F.3d at 1142 (citation omitted).

Here, T&T only alleges that the Court has specific personal jurisdiction over Oceanside. (Doc. 20 at 7.) Thus, the Court must analyze whether it has jurisdiction over Oceanside using the three-prong test adopted by the Ninth Circuit:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (citation omitted). The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff establishes the first two prongs, the burden shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be

reasonable." *Schwarzenegger*, 374 F.3d at 802 (citation omitted).

**B. Analysis**

T&T alleges two perceptible legal claims for tortious interference with business expectancy against Oceanside and one claim for breach of contract. The first tortious interference claim arises from Oceanside entering Healing Clay into Amazon's "Transparency" program. (Doc. 26 ¶ 43.) The second tortious interference claim arises from Oceanside's counsel threatening to notifying Amazon if T&T continued to sell Healing Clay on Amazon. (*Id.*) Last, T&T's breach of contract claim arises from the alleged buy back contract that Oceanside failed to honor. (*Id.* ¶ 50.) Each claim must be independently evaluated to determine whether the Court may exercise personal jurisdiction over Oceanside for that claim. *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citation omitted) ("Personal jurisdiction must exist for each claim asserted against a defendant.").

### 1. Entrance into Amazon's "Transparency" Program

T&T alleges that tortious interference with its business expectancy occurred when Oceanside entered Healing Clay into Amazon's "Transparency" program. (Doc. 20 at 10.) The "Transparency" program requires Aztec products to be specially packaged. (Doc. 26 ¶ 24.) As a result, T&T can no longer sell Healing Clay on Amazon, because the product will be "set aside and marked as defective." (*Id.*)

T&T first must establish that Oceanside "either purposefully availed itself of the privilege of conducting activities in [Arizona], or purposefully directed its activities toward [Arizona]." *Schwarzenegger*, 374 F.3d at 802. Because the "purposeful direction" analysis is "most often used in suits sounding in tort," *id.* (citation omitted), the Court will apply it here. Under this test, the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 803.

The first prong is satisfied because the entry into Amazon's "Transparency" program was an intentional act. An act is intentional if the actor intended "to perform an

actual, physical act in the real world," without regard for whether the actor intended "to accomplish a result or consequence of that act." *Id.* at 806 (citations omitted). Therefore, regardless of whether Oceanside intended to prevent T&T from selling Aztec products on Amazon by entering into the "Transparency" program, Oceanside nonetheless committed an intentional act.

The second prong is not satisfied because Oceanside's conduct was not "expressly aimed at [Arizona]." Express aiming occurs when there is "individualized targeting" of a plaintiff in the forum state by a defendant. *Caddy*, 453 F.3d at 1157-58; *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011). The express aiming must "arise out of the contacts that the defendant himself creates with the forum State" and the Court must look to "the defendant's contacts with the forum State itself, not with the person who resides there." *Morrill*, 873 F.3d at 1143 (citation omitted). Here, T&T does not allege that Oceanside entered the "Transparency" program with the intent to specifically target T&T or to prevent T&T from selling products on Amazon. Indeed, construing the facts in the light most favorable to T&T, it appears that Oceanside was not even aware of T&T when Oceanside would have entered into the "Transparency" program. Put simply, Oceanside had no reason to know that entry into the "Transparency" program would affect T&T in Arizona. Nor did Oceanside have any contact with Arizona related to the "Transparency" program. Oceanside's entry into the "Transparency" program therefore was not expressly aimed at Arizona and the Court does not have personal jurisdiction over Oceanside regarding the tortious interference claim arising from that conduct.

### 2. Threat to Notify Amazon

T&T next alleges that Oceanside tortiously interfered with its business expectancy with Amazon when Oceanside sent an email threatening to notify Amazon's Seller Central that T&T was selling Aztec product without authorization. (Doc. 20 at 9.) After discussions broke down regarding the buy back of the Healing Clay, Oceanside's attorney stated: "You should also be advised that if your client sells any Aztec Secret product on Amazon.com, seller central will be notified." (Doc. 26 at Ex. 9.) T&T alleges that

notification could result in very serious consequences for T&T, including closure of T&T's Amazon account. (*Id.* ¶ 42.) Because this claim sounds in tort, the Court must again apply the "purposeful direction" test. *See Caddy*, 453 F.3d at 1156.

First, the threat issued by Oceanside through its attorney clearly constitutes an intentional act because Oceanside intended "to perform an actual, physical act in the real world." *Schwarzenegger*, 374 F.3d at 806. Second, Oceanside expressly aimed the threat at T&T, an Arizona limited liability company. T&T points to exhibits attached to the complaint that show T&T's emails included an Arizona address in the signature block. (Doc. 20 at 8; Doc 26 at Exs. 4-8.) Moreover, the draft buy back agreement that Oceanside sent to T&T included T&T's Arizona address. (Doc. 20 at 8; Doc 26 at Ex. 1.) Therefore, T&T has sufficiently alleged that Oceanside knew T&T was located in Arizona when it threatened T&T, which constitutes an "individualized targeting" of T&T in Arizona. *Caddy*, 453 F.3d at 1157-58. Last, Oceanside's threat "caus[ed] harm . . . which [Oceanside] kn[ew] [was] likely to be suffered in the forum state," which is the third prong of the test. *Caddy*, 453 F.3d at 1156. Indeed, Oceanside intended to prevent T&T from selling Healing Clay on Amazon, causing T&T to retain the product in its Arizona warehouse. (Doc. 26 ¶ 38.) Consequently, "purposeful direction"—the first prong of the personal jurisdiction test—has been satisfied.

The same cannot be said with respect to the second prong of the specific personal jurisdiction test—that "the claim must be one which arises out of or relates to the defendant's forum-related activities." This requirement is established "if the plaintiff 'would not have been injured but for' the defendant's conduct directed at the forum." *Biliack v. Paul Revere Life Ins. Co.*, 265 F.Supp.3d 1003, 1008 (D. Ariz. 2017) (citation omitted). Here, even if Oceanside hadn't threatened to notify Amazon's Seller Central, T&T would have remained unable to sell Healing Clay on Amazon. (Doc. 26 ¶ 24.) As alleged by T&T, any Healing Clay T&T attempts to sell on Amazon will be "set aside and marked as defective." (*Id.*) Therefore, T&T's ability to sell Healing Clay was not hindered by Oceanside's threat. And because Oceanside's conduct was not a "but for" cause of

T&T's injury, the Court lacks personal jurisdiction over Oceanside regarding the tortious interference claim arising from the threat to notify Amazon's Seller Central.

### 3. Breach of Contract

T&T alleges that Oceanside agreed to buy back all of the Healing Clay in T&T's possession, for the price that T&T originally paid, but subsequently refused to honor the agreement. (Doc. 26 ¶¶ 25-33, 50.) This claim arises out of contract, so the Court will apply the "purposeful availment" test. *Schwarzenegger*, 374 F.3d at 802 (citation omitted) ("A purposeful availment analysis is most often used in suits sounding in contract.")

Purposeful availment requires a showing that a defendant "purposefully availed himself of the privilege of doing business in a forum state[.]" *Id.* This "typically consists of evidence of the defendant's actions in the forum," like executing or performing a contract in the forum state. *Id.* By taking such actions, a defendant "invok[es] the benefits and protections of [the forums state's] laws" and thus the defendant "must submit to the burdens of litigation in that forum." *Id.* (citations omitted).

T&T fails to demonstrate that Oceanside purposefully availed itself of the privilege of doing business in Arizona. Even assuming for the sake of argument that Oceanside's discussions with T&T resulted in a binding buy back contract (the Court is dubious that such a contract arose, but Oceanside did not move to dismiss under Rule 12(b)(6)), this lone purchase would be insufficient to create minimum contacts with Arizona such that exercising personal jurisdiction over Oceanside is proper. The alleged contract created no ongoing obligations in Arizona; once Oceanside would have received the Healing Clay and paid T&T, the transaction would have been complete. *Boschetto v. Hansing*, 539 F.3d 1011, 1017-19 (9th Cir. 2008) ("This was a one-time contract for the sale of a good that involved the forum state only because that is where the purchaser happened to reside, but otherwise created no 'substantial connection' or ongoing obligations there."). The alleged contract is merely a "one-shot affair," and "a contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Id.* Therefore, the Court
///

cannot exercise specific personal jurisdiction over Oceanside related to the breach of contract claim.

Accordingly, **IT IS ORDERED** that:

(1) Aztec's Motion to Dismiss for Failure to State a Claim (Doc. 17) is **DENIED;**

(2) T&T's motion for expedited hearing (Doc. 10) is **DENIED**; and

(3) Oceanside's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 14), is **GRANTED.**

Dated this 21st day of December, 2018.

Dominic W. Lanza
United States District Judge